Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 04 C 3386 | DATE | September 17, 2004 |
| CASE TITLE | U.S. ex rel. Murray v. Lambert | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] After careful consideration of the entire record, Murray's § 2254 petition [1-1] is denied in its entirety. The clerk is directed to enter a Rule 58 judgment and to terminate this case. Enter Memorandum and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 13 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| RTS/c | courtroom deputy's initials | 2004 SEP 22 AM 9:00 U.S. DISTRICT COURT | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>ex rel. JEROME MURRAY,<br>    Petitioner, | )<br>)<br>)<br>) | |
| v. | ) | 04 C 3386 |
| GREGORY LAMBERT,<br>    Respondent. | )<br>)<br>) | |

## MEMORANDUM AND ORDER

Petitioner Jerome Murray's pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is before the court. For the following reasons, Murray's petition is denied.

## I.  Background

The court will presume that the state court's factual determinations are correct for the purposes of habeas review as Murray has not provided clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Todd v. Schomig*, 283 F.3d 842, 846 (7th Cir.2002). The court thus adopts the state court's recitation of the facts, and will briefly summarize the key facts which are relevant to Murray's § 2254 petition.

In June of 1990, while Lisa Stokes and two of her friends were seated on a park bench, a bearded, African-American man attempted to engage them in conversation. When the women attempted to leave, the man seized Stokes using a knife, dragged her deeper into the park, and raped her. Stokes escaped and called the police. Physical evidence, known as a "Vitullo kit," was taken from Stokes when she was at the hospital. This kit established that the attacker had type B blood. Murray, like 36% of the population, had type B blood.

Stokes and the two friends who were with her on the day of the attack testified at trial and identified Murray as the offender. In addition, the State presented two witnesses (a serologist and a nurse) who testified about the Vitullo kit. Their description of the kit's contents were largely but not entirely similar. Trial counsel did not attempt to challenge the chain of custody for the kit from the time it was assembled in the hospital to the time it arrived at the laboratory for analysis. The defense conceded that Stokes was raped but contended that Murray was not the attacker and, among other things, presented witnesses who testified that Murray's facial hair at the time of the attack did not resemble the descriptions given by the three women.

The jury convicted Murray of aggravated criminal sexual assault. He was subsequently sentenced to fifty-five years imprisonment. His conviction and sentence were affirmed on direct appeal and he did not file a petition for leave to appeal ("PLA") with the Illinois Supreme Court for his direct appeal.

Murray did, however, file a pro se post conviction petition. In this petition, he asserted that trial counsel was ineffective for failing to challenge the procedures used to identify him. After counsel was appointed, Murray filed a supplemental pro se petition alleging that the chain of custody of the evidence used against him was compromised and/or fabricated. Murray also filed a complaint with the Attorney Registration and Disciplinary Commission ("ARDC") against his appointed counsel after counsel declined to adopt the pro se supplemental petition. In addition, counsel filed a petition contending that: (1) trial and appellate counsel in the direct proceedings were ineffective because they failed to contest admission of the Vitullo kit based on problems with the chain of custody; and (2) Murray's sentence violated the rule set forth in *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

The trial court dismissed all of the petitions. Murray then filed a successive post-conviction petition which included the claims in his original pro se post-conviction petition. After the trial court rejected the successive petition, Murray appealed. The Illinois Appellate Court consolidated the appeals and affirmed across the board, finding, among other things, that: (1) Murray had waived his argument that the Vitullo kit was fabricated and/or doctored; and (2) the trial court properly dismissed the chain of custody argument raised by Murray's lawyer because the evidence against Murray was overwhelming. Murray filed an unsuccessful PLA challenging these two holdings.

In his § 2254 petition, Murray asserts that: (1) the trial court erred when it rejected his pro se supplemental post-conviction petition because his conviction was based on false evidence; (2) his due process rights were violated when the State presented false evidence at trial; (3) the rejection of his post-conviction ineffective assistance claim led to a denial of due process; (4) the trial court erred when it ruled on his post-conviction petition without first determining whether the fact that he had filed an ARDC complaint against his appointed counsel meant that counsel had a conflict of interest; (5) the appellate court erred when it held that he had waived his right to obtain an evidentiary hearing during the post-conviction proceedings by not raising the evidentiary hearing argument on direct appeal; and (6) his trial counsel and appellate counsel on his direct appeal were ineffective.

## II. Discussion

### A. Threshold Matters

The court will begin by summarizing the rules governing exhaustion and procedural default and by recapping the standard of review that guides this court in resolving Murray's § 2254 petition.

### 1. Exhaustion and Procedural Default

Before this court may reach the merits of Murray's federal habeas claims, it must consider whether he has exhausted his state remedies and avoided procedural default under Illinois law. *See Mahaffey v. Schomig*, 294 F.3d 907, 914-15 (7th Cir. 2002).

#### a. Exhaustion of State Court Remedies

To exhaust state court remedies, a petitioner must give the state courts an opportunity to act on each of his claims before he presents them to a federal court. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). State remedies are exhausted when they are presented to the state's highest court for a ruling on the merits or when no means of pursuing review remain available. *Boerckel*, 526 U.S. at 844-45, 847; 28 U.S.C. § 2254(c). Here, Murray has exhausted his state court remedies because no state court relief is available to him at this stage in the proceedings.

#### b. Procedural Default

Procedural default occurs when a petitioner fails to comply with state procedural rules. *Mahaffey*, 294 F.3d at 915. This occurs when the petitioner fails to pursue all appeals required by state law, *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991), or fails to fully and fairly present his federal claims to the state court, *Boerckel*, 526 U.S. at 844. It also occurs when the state court did not address a federal claim because the petitioner failed to satisfy an independent and adequate state procedural requirement, *Stewart v. Smith*, 536 U.S. 856 (2002). If an Illinois appellate court finds that a claim is waived, that holding constitutes an independent and adequate state ground. *Rodriquez v. McAdory*, 318 F.3d 733, 735 (7th Cir. 2003).

Nevertheless, this court may still reach the merits of a procedurally defaulted claim if the petitioner establishes either cause for his failure to follow a rule of state procedure and actual prejudice, or that the default will result in a fundamental miscarriage of justice. *Edwards v.*

*Carpenter*, 529 U.S. 446, 451 (2000). To establish a fundamental miscarriage of justice, the petitioner must present new and convincing evidence of his innocence by showing that it is more likely than not that no reasonable juror would convict him in light of the new evidence. *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

### 2. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a habeas petitioner is not entitled to a writ of habeas corpus unless the challenged state court decision is either "contrary to" or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000). In *Williams*, the Supreme Court explained that a state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by the Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *See id.* at 405.

With respect to the "unreasonable application" prong under § 2254(d)(1), a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *See id.* at 407. A state court's application of Supreme Court precedent is unreasonable if the court's decision was "objectively" unreasonable. *See Lockyer v. Andrade,* 123 S.Ct. 1166, 1174 (2003) (unreasonable application more than incorrect or erroneous). In order to be considered unreasonable under this standard, a state court's decision must lie "well outside the boundaries of permissible differences of opinion." *See Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002); *see also Searcy v. Jaimet,* 332 F.3d 1081, 1089 (7th Cir. 2003) (decision need not be well reasoned or fully reasoned and is

reasonable if one of several equally plausible outcomes); *Schultz v. Page,* 313 F.3d 1010, 1015 (7th Cir. 2002) (reasonable state court decision must be minimally consistent with facts and circumstances of the case).

B.    **Murray's Claims**

The court will group the claims in a logical sequence rather than considering them individually in the order set forth in Murray's petition.

1.    **Procedural Default**

a.    **The Vitullo Kit**

Four of Murray's claims center around the Vitullo kit. First, he contends that the trial court erred when it rejected his pro se supplemental post-conviction petition because his conviction was based on false evidence. Second, he asserts that the State violated his due process rights by presenting false evidence at trial. Third, he challenges the appellate court's finding that he waived his right to obtain an evidentiary hearing about the Vitullo kit during his post-conviction proceedings because he should have raised this issue on direct appeal. Fourth, he contends that his trial counsel was ineffective because he did not challenge the admission of the Vitullo kit based on an allegedly compromised chain of custody.

The Illinois Appellate Court held that Murray had waived the first and second false evidence claims by not raising them in his direct appeal, explaining:

> The integrity of the evidence used against defendant at trial is an issue that would have been known at the time of the direct appeal. The documentary evidence upon which the defendant relies includes conflicting testimony about what samples were contained in the evidence kit and a crime lab form that shows receipt of additional evidence. Defendant also refers to the State's need to obtain additional blood samples from him during trial. Defendant claims that the need for "replacement" samples underscores the compromised chain of custody. Setting aside the fact that defendant agreed to provide additional blood samples,

- 6 -

> implicating waiver, all of defendant's claims are based on facts contained in the
> trial record available on direct appeal.

*People v. Murray*, Nos. 1-00-4230 & 1-01-1736 at 6 (1st. Dist. Oct. 14, 2003) (unpublished order).

The Illinois Appellate Court also held that the evidentiary hearing argument was essentially a recast version of the false evidence claims because it was an attempt to relitigate the evidence kit issue with information that was known at the time of Murray's direct appeal. *Id.* at 5-6. In addition, the Illinois Appellate Court found that Murray waived his ineffective assistance of trial counsel claim because he could have argued on direct appeal that counsel was ineffective because counsel failed to challenge the admission of the kit. *Id.* at 6.

As noted above, a defendant must properly present his constitutional claims to the state courts to avoid procedural default. *See generally O'Sullivan v. Boerckel*, 526 U.S. at 845. The failure to properly present a claim to the state courts is an independent and adequate state procedural ground which precludes habeas review if the state court found that the procedural defect barred it from resolving the defendant's claims on the merits. *See Dressler v. McCaughtry*, 238 F.3d 908, 912-13 (7th Cir. 2001). Moreover, under Illinois law, if a defendant fails to raise an issue on direct appeal when that issue could have been raised on direct appeal, res judicata bars him from relitigating this issue in postconviction proceedings. *Mahaffey v. Schomig*, 294 F.3d 907, 916 (7th Cir. 2002).

Here, the Illinois Appellate Court found that Murray could have raised his Vitullo kit arguments and addressed counsel's performance with respect to the kit on direct appeal. *People v. Murray*, Nos. 1-00-4230 & 1-01-1736 at 6. This is correct because Murray's arguments are all based on material within the four corners of the trial record. Indeed, as the Illinois Appellate

Court recognized, Murray declined to pursue DNA testing to establish his innocence and thus could only frame arguments based on the evidence presented at trial. *Id.* at 4-6.

Because Murray did not point to any evidence outside the trial record in his post-conviction petition, the state court found that he had waived his Vitullo kit arguments by failing to raise them on direct appeal as required by state law. The state court's reliance on Murray's waiver means that the Vitullo kit arguments are procedurally defaulted based on an independent and adequate state ground.

### b. Conflict of Interest

Murray also argues that the trial court should have determined whether his counsel was conflicted before it ruled on the portion of his post-conviction petition that counsel prepared. A petitioner must present his claims to the Illinois courts, up to and including the Illinois Supreme Court, to avoid procedural default. *See Boerckel*, 526 U.S. at 844. Because Murray's conflict of interest argument does not appear in his PLA, it is procedurally defaulted.

### c. Exceptions to Procedural Default

A federal court may not grant relief on a procedurally defaulted claim unless the petitioner can establish cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that the court's failure to consider the claim will result in a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. at 750. Although Murray does not contend that cause and prejudice or the fundamental miscarriage of justice exceptions excuse his default, the court will nevertheless consider whether these exceptions can help him.

Cause exists where "some objective factor external to the defense impeded [the petitioner's] efforts to comply with the State's procedural rule." *Strickler v. Greene*, 527 U.S.

263, 282 (1999). Here, Murray failed to properly follow state procedural rules. Nothing in the record before the court indicates that an objective factor prevented him from doing so. Thus, cause does not excuse his default. Moreover, an allegation of ineffective assistance of counsel is not, by itself, enough to establish prejudice. *See Pitsonbarger v. Gramley*, 141 F.3d at 737. Thus, neither cause nor prejudice exists.

The fundamental miscarriage of justice exception is also inapplicable because "this relief is limited to situations where the constitutional violation has probably resulted in a conviction of one who is actually innocent." *Dellinger v. Bowen*, 301 F.3d at 767, *citing Schlup v. Delo*, 513 U.S. 298, 327 (1995). To show "actual innocence," a petitioner must present clear and convincing evidence that, but for the alleged error, no reasonable juror would have convicted him. *Id.* Murray's petition, as well as the state court pleadings submitted to the court, do not contain any substantiated allegations of actual innocence. Thus, this exception does not apply.

### 2. Ineffective Assistance of Appellate Counsel

In the briefs filed with the Illinois courts, Murray argued that his appellate counsel from his direct appeal was ineffective because he did not contend that trial counsel was ineffective. In support, Murray contended that his trial counsel should have raised "major discrepancies in the collecting, labeling, and forwarding of the biological evidence" and pointed to discrepancies in the witnesses' testimony about the contents of the Vitullo kit. *People v. Murray*, Nos. 1-00-4230 & 1-01-1736 at 7. Specifically, "a criminalist testified that hair samples were labeled as exhibits 7F, G, H, I and J" but "a nurse who collected the samples identified other physical evidence as bearing the same labels." *Id.* In addition, a witness testified that the evidence kit contained a single swab, but a lab report referred to multiple swabs. *Id.* Finally, the State did not

present a witness to testify about how the evidence was transported from the hospital, where it was collected, to the crime lab, where it was analyzed. *Id.*

The Illinois Appellate Court began its analysis of Murray's ineffective assistance claim by recapping the well-known *Strickland* standard. *See Strickland v. Washington*, 466 U.S. 668, 687-91 (1984). Under *Strickland*, Murray must show that his counsel's representation fell below an objective standard of reasonableness. *Id.* at 687-88. He also must establish that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id.* at 694. If a defendant fails to satisfy one of these prongs, the court's inquiry under *Strickland* ends. *See id.* at 697; *see also Hough v. Anderson*, 272 F.3d 878, 890 (7th Cir.2002).

The court then declined to address whether counsel's performance was objectively reasonable because it concluded that Murray could not establish prejudice. Specifically, it held that the inconsistencies did not make the outcome of the trial unreliable in light of the overwhelming identification testimony because the victim and two eyewitnesses all identified Murray and they had an "ample opportunity to observe him" prior to the attack. *People v. Murray*, Nos. 1-00-4230 & 1-01-1736 at 8. The court also noted that these three witnesses identified Murray out of a lineup and testified consistently and credibly at trial. *Id.* Finally, it stressed that the physical evidence did not establish that Murray was the attacker. Instead, it established that he was a member of the 36% of the population who could have been responsible for the attack due to his blood type. *Id.* It thus concluded that the failure to challenge the use of the physical evidence on direct appeal via an ineffective assistance argument was not prejudicial.

This conclusion is not contrary to clearly established federal law as determined by the United States Supreme Court because the state court followed the *Strickland* framework. *See* 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. at 405. In addition, the Vitullo kit was not a

- 10 -

smoking gun which led inexorably to Murray's conviction. Instead, it was one piece out of many which supported the jury's verdict. The state court's finding that appellate counsel's decision not to pursue an ineffective assistance of trial counsel argument was not prejudicial is thus not an "unreasonable application" of *Strickland* because it is consistent with facts and circumstances of the case. *See Schultz v. Page,* 313 F.3d at 1015.

### 3. Due Process

Finally, Murray argues that the state court's rejection of his post-conviction ineffective assistance claim violated his due process rights. Ineffectiveness claims, however, arise under the 6th Amendment. Moreover, a constitutional claim, must rise or fall on its merits. This means that a habeas petitioner cannot get two bites at the apple by arguing that a constitutional violation occurred and then, after the court rejects that argument, start afresh by claiming that the rejection of that same constitutional claim also violated his due process rights.

This court has found that the state court's rejection of Murray's ineffective assistance claims is neither "contrary to" or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court. This means that Murray is not entitled to habeas relief based on counsel's performance regardless of whether he casts his request for relief as an ineffectiveness claim or a due process claim.

### 4. The State's Arguments

The court feels compelled to comment on the memorandum submitted by the Illinois Attorney General's Office on behalf of the respondent. Counsel argued that the state court's finding that Murray waived his arguments by failing to properly present them on direct appeal is a non-cognizable claim because it rests on a determination of state law. This is flatly incorrect. The state court declined to reach the merits of Murray's arguments because he did not present

them as required by state law. This holding is based on a bedrock principle of federal habeas law: the independent and adequate state ground doctrine. A non-cognizable claim, on the other hand, is based on a merits ruling by the state court which in turn is founded on state law.

In addition, counsel argues that federal constitutional claims are completely insulated from federal habeas review if the state court adjudicates them on the merits. The Antiterrorism and Effective Death Penalty Act may have eviscerated the Great Writ, but it indisputably did not go this far. Counsel then follows up this statement of law by quoting the "contrary to or an unreasonable application of federal law as established by the United States Supreme Court" standard in § 2254(d)(1) and concluding, with absolutely no discussion, that Murray's claims are barred.

The court recognizes that the field of federal habeas corpus litigation can be complex and challenging, but the arguments raised by counsel here misstate basic rules. The court thus has no choice but to remind counsel that it expects a higher level of advocacy from attorneys appearing before it. *See Madej v. Briley*, 370 F.3d 665, 667 (7th Cir. 2004) (expressing concern about the "frivolous and unprofessional" arguments consistently raised by lawyers representing the State of Illinois).

### III.  Conclusion

For the above reasons, Murray's § 2254 petition [1-1] is denied.

DATE: 9-17-04

Blanche M. Manning
United States District Court Judge

04cv3386.hab

- 12 -